IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ANN R. QUAPAW,<br><br>          Plaintiff,<br><br>vs.<br><br>MICHAEL ASTRUE,<br>Commissioner of Social Security,<br><br>          Defendant. | Case No. 3:10-cv-0011-RRB<br><br>**ORDER DENYING MOTION**<br>**FOR RELIEF AT DOCKET 12** |

## I.  MOTION PRESENTED

Plaintiff Ann R. Quapaw, having exhausted her administrative remedies, filed a Social Security Complaint alleging the final decision of the Social Security Commissioner was erroneous as a matter of law and regulation.[1] At Docket 12, Quapaw has filed a Motion for Relief. At Docket 17, Defendant Michael J. Astrue, Commissioner of Social Security Administration ("the Commissioner"), filed a Response in Opposition to Plaintiff's

---

[1]     Docket 1.

ORDER DENYING MOTION FOR RELIEF - 1
3:10-CV-0011-RRB

Motion. A Reply was filed at Docket 18. Oral argument was not requested and would not assist the Court.

## II. BACKGROUND

Quapaw was an insured claimant for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[2] She suffered from morbid obesity and related impairments, such as chronic pain.[3] She also suffered from mild mental impairments which may have been caused by head trauma, developmental features, or cultural features.[4] Although the majority of her medical history relates to her physical impairments such as obesity and pain, Quapaw raises several issues on appeal to this Court regarding the ALJ's findings relating to her mental impairments.

## III. STANDARD OF REVIEW

The Social Security Act provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability.[5] For purposes of the Act, a "disability" is defined as the "inability to engage in any

---

[2]   42 U.S.C. §§ 401-33.

[3]   AR 15-19.

[4]   AR 18.

[5]   42 U.S.C. § 423(a)(1).

ORDER DENYING MOTION FOR RELIEF - 2
3:10-CV-0011-RRB

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."[6] A person is not disabled if he or she is capable of engaging "in any . . . kind of substantial gainful work which exists in the national economy."[7]

Upon denial of disability benefits after a hearing by an ALJ, a claimant may request that the SSA Appeals Council review the ALJ's decision.[8] "Where, as here, the Appeals Council denies a request for review of an ALJ's decision, the decision of the ALJ represents the final decision of the Commissioner."[9] After a final decision of the Commissioner, the claimant may seek judicial review by the district court.[10]

On de novo review, a district court may enter, upon the pleadings and a transcript of the record, a judgment affirming, modifying, or reversing the ALJ's decision, with or without

---

[6]     42 U.S.C. § 423(d)(1)(A).

[7]     42 U.S.C. § 423(d)(2).

[8]     20 C.F.R. § 404.967.

[9]     *Baston v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193 n.1 (9th Cir. 2004) (citing 20 C.F.R. §404.981).

[10]     42 U.S.C. §405(g).

ORDER DENYING MOTION FOR RELIEF - 3
3:10-CV-0011-RRB

remanding the case for a rehearing.[11] The district court must uphold the ALJ's decision if it is supported by substantial evidence and the ALJ has applied the correct legal standards.[12]

## IV.  DISCUSSION

Quapaw's opening brief raises eight objections to or disagreements with the ALJ's decision:

1.  Objection to the ALJ's "explicit or implicit finding" that Quapaw's borderline intellectual functioning did not constitute a "severe" mental impairment;

2.  The ALJ's failure to find that Quapaw's personality disorder was a "severe" mental impairment;

3.  The ALJ's failure to find that Quapaw's dysthymia was a "severe" mental impairment;

4.  The ALJ's duty to develop the record by failing to obtain additional neurophysical testing;

5.  "Other harmful defects" in the ALJ's evaluation of Quapaw's mental impairments;

6.  The ALJ's misuse of the failure-to-follow-prescribed-treatment doctrine;

---

[11]    42 U.S.C. §405(g).

[12]    *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2001).  See also *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

ORDER DENYING MOTION FOR RELIEF - 4
3:10-CV-0011-RRB

7.    The ALJ's evaluation of Quapaw's credibility; and

8.    The ALJ's failure to obtain medical opinions regarding morbid obesity and mild osteoarthritis.

This Court will address all of these issues by discussing: (A) The ALJ's evaluation of Quapaw's mental impairments[13]; (B) The ALJ's credibility evaluation[14]; and (C) The ALJ's duty to develop the record.[15]

## A. The ALJ's Evaluation of Quapaw's Mental Impairments

Quapaw argues that substantial evidence does not support the ALJ's decision because it did not find the following impairments "Severe" at Step-Two: Borderline Intellectual Functioning, Personality Disorder, and Dysthymia. Quapaw contends that even if each of these impairments alone was not severe, the ALJ should have found them severe in combination.

Substantial evidence supports the ALJ's finding the Quapaw had no severe mental impairment. An impairment is only severe if it "significantly limits . . . mental ability to do basic work

---

[13]    Dealing with sections (A), (B), (C) and (E) of Plaintiff's Opening Brief.

[14]    Dealing with sections (F) and (G) of Plaintiff's Opening Brief.

[15]    Dealing with sections (D) and (H) of Plaintiff's Opening Brief.

ORDER DENYING MOTION FOR RELIEF - 5
3:10-CV-0011-RRB

activities."[16] The ALJ analyzed all purported impairments in combination. The objective medical evidence supports the ALJ's determination that Quapaw's mental impairments were mild, and thus could be considered non-severe under the law.[17]

The opinion of Dr. Youngblood, who examined Quapaw four months prior to the ALJ's decision, is the source of the parties' contention. Quapaw argues that the ALJ either implicitly or explicitly rejected Dr. Youngblood's diagnosis of severe borderline intellectual functioning. The Commissioner correctly states that Dr. Youngblood assessed only mild cognitive impairment.[18] The ALJ correctly considered the mild impairment to be non-severe.[19] Although the quantitative score on the testing was within the guidelines definition of borderline, Dr. Youngblood's ultimate diagnosis was the basis from which the ALJ ultimately made a properly-supported finding of fact.

Dr. Youngblood also assessed Quapaw with significant depression and anxiety. Dr. Campbell, the state agency

---

[16]    20 C.F.R. § 404.1520(c); SSR 96-3p.

[17]    20 C.F.R. § 404.1520a(d)(1); *Saelee v. Chater,* 94 F.3d 520, 522 (9th Cir. 1996 as amended).

[18]    AR 123.

[19]    20 C.F.R. § 404.1520a(d)(1); *Saelee v. Chater,* 94 F.3d 520, 522 (9th Cir. 1996 as amended) (mild impairments may be considered non-severe).

Case 3:10-cv-00011-RRB   Document 19   Filed 09/02/10   Page 6 of 10

psychiatrist, diagnosed Quapaw with borderline personality disorder and dysthymia (depressed mood).[20] Quapaw seems to rely on the fact that these conditions were chronic, meaning expected to persist, as evidence that they were severe.[21] This is not the case: impairments must both impede the ability to do work and persist for more than 12 months in order to be considered severe at Step Two. Neither Quapaw's borderline personality disorder nor dysthymia impaired her ability to work according to the medical records. The ALJ gave some, but not significant, weight to Dr. Youngblood's opinions in light of Quapaw's medical history, which indicated sporadic and mild mental impairments at most. Even presuming the ALJ rejected Dr. Youngblood's opinion, which is not the case, the ALJ gave clear, convincing reasons for doing so.[22]

When considered in combination, it is possible that Quapaw's borderline intellectual functioning, borderline personality disorder, and depressed mood could impair her ability to work. But the medical evidence could also support the finding the ALJ ultimately made, which is that Quapaw's mental impairments, considered in combination, are not severe because they do not

---

[20]    AR 311.

[21]    Docket 12 at 11-12.

[22]    *See Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir.1988).

ORDER DENYING MOTION FOR RELIEF - 7
3:10-CV-0011-RRB

inhibit her ability to do work.[23] The other harmful defects alleged

with the ALJ's decision are unconvincing.[24] The ALJ's findings were

supported by substantial evidence and thus cannot be overturned.

Because the ALJ's determination that Quapaw's mental impairments

were not severe at Step Two was proper, the ALJ was not required to

consider them at Step Four, rendering Quapaw's further objections[25]

moot.[26]

> **B.     The AlJ's Evaluation of Quapaw's Credibility**

The ALJ evaluated Quapaw's testimony as "not credible," based

on several criteria, one of which was her inconsistent weight loss,

which had been prescribed by her doctor. Other reasons given for

finding Quapaw not credible included: inconsistent activities of

daily living, issues of motivation and secondary gain, the medical

reports of various doctors expressing doubts about compliance, and

failing to seek treatment for reported pain.[27]

---

[23]     AR 16-19.

[24]     Docket 12 at 13.

[25]     Docket 12, 7-10.

[26]     *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)
(*citing Desrosiers v. Secretary of Health and Human Services*, 846
F.2d 573, 578 (9th Cir.1988) (Pregerson, J., concurring) ("The
ALJ's depiction of the claimant's disability must be accurate,
detailed, and supported by the medical record.").

[27]     AR 22-23.

Case 3:10-cv-00011-RRB   Document 19   Filed 09/02/10   Page 8 of 10

The ALJ noted that Quapaw failed to follow prescribed treatment for weight loss as a reason for finding that Quapaw's testimony was not credible. The ALJ did not rely on the failure to follow treatment other than to assess Quapaw's credibility. This was an incorrect application of the law and the ALJ erred.[28] However, because other reasons for finding Quapaw not credible were valid, this was harmless error and this Court cannot reverse because of the single error in the credibility determination. Where the ALJ's credibility assessment is supported by substantial evidence, it will not be disturbed even where some of the reasons for discrediting a claimant's testimony are properly discounted.[29]

## C. The ALJ's Duty to Develop the Record

Quapaw takes issue with the ALJ's failure to obtain additional neurophysical testing or medical opinions regarding morbid obesity and mild osteoarthritis. These would be valid contentions if the ALJ failed to adequately protect Quapaw's interests by failing to further investigate an ambiguous record.

Because the hearing process is not adversarial, the ALJ in a Social Security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are

---

[28]    *Orn*, 495 F.3d at 638 (citing SSR 02-1p).

[29]    *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

considered.[30] Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."[31]

The evidence regarding Quapaw's morbid obesity and mild osteoarthritis was not ambiguous. It was, in fact, voluminous and further medical evidence was unnecessary. The ALJ's evaluation of Quapaw's mental impairments was adequate for the reasons explicated *supra* in Section (A). The ALJ was under no duty to further develop the record and so did not err.

## IV.  CONCLUSION

A decision to deny benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error. Here, the ALJ's decision to deny benefits is supported by substantial evidence. This Court finds no material legal error.

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiff's Motion at **Docket 12** is **DENIED**. Judgment shall enter for the Defendant.

ENTERED this 2nd day of September, 2010.

> S/RALPH R. BEISTLINE
> UNITED STATES DISTRICT JUDGE

---

[30]    *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (*quoting Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

[31]*Smolen*, 80 F.3d at 1288; *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir.1998).